[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 420.]

OFFICE OF DISCIPLINARY COUNSEL *v*. LAWRENCE.

[Cite as *Disciplinary Counsel v. Lawrence*, 1995-Ohio-242.]

*Attorneys at law—Misconduct—One-year suspension—Conduct involving fraud, deceit, dishonesty, or misrepresentation—Conduct adversely reflecting on fitness to practice law—Neglect of an entrusted legal matter—Failure to preserve identity of client's property.*

(No. 95-371—Submitted April 4, 1995—Decided July 5, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-13.

_____

{¶ 1} In a complaint filed on February 22, 1994, relator, Office of Disciplinary Counsel, charged respondent, David Alan Lawrence of Euclid, Ohio, Attorney Registration No. 0015293, with three counts of professional misconduct. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on October 4, 1994.

{¶ 2} The parties stipulated to the facts and misconduct alleged in Counts I and II, and the panel found no misconduct in connection with Count III of the complaint.

{¶ 3} With respect to Count I, the stipulations establish that respondent was named executor of James Ortolani's estate and filed an application to administer the estate in September 1991. In November 1991, respondent also applied to administer the estate of Sarah Kershaw. Respondent drew at least three checks payable to himself from the Ortolani estate's checking account without permission from either the probate court or the estate heirs. He wrote the first check for $2,000 on August 26, 1992, the second check for $4,000 on September 17, 1992, and the third check for $65,000 on September 25, 1992, for a total of $71,000. Respondent

also wrote two additional checks—one for $3,000 on February 25, 1993 and one for $1,000 on March 22, 1993—to pay for his attorney fees, which were purportedly approved by the probate court on March 16, 1993. After using the entire $75,000 withdrawn from the Ortolani estate for his personal expenses, respondent replaced these funds by withdrawing $75,000 from the Kershaw estate's checking account, depositing it in his escrow account, and writing a check for $71,206.63 to deposit with the Estate of James Ortolani. Sometime later, before these transfers were discovered, respondent apparently repaid the Kershaw estate the $75,000 he had withdrawn without authority and filed the final accountings to close both estates. Respondent admitted that his misappropriation of assets from the Ortolani and Kershaw estates violated DR 1-102(A)(4) (conduct involving fraud, deceit, dishonesty, or misrepresentation), 1-102(A)(6) (conduct adversely reflecting on fitness to practice law), 6-101(A)(3) (neglect of an entrusted legal matter), and 9-102(A) (failure to preserve identity of client's property).

{¶ 4} With respect to Count II, the stipulations establish that respondent agreed to file claims on behalf of Joan L. Adams for injuries sustained in two automobile accidents. Respondent, it appears, filed only one of these lawsuits, and he failed to provide status reports despite Adams's repeated requests. Adams consulted another attorney when she was involved in a third accident, and she asked that attorney to take over for respondent in her first two cases. In March 1993, the new attorney asked respondent for documentation from both case files, but respondent failed to reply to any of his messages or facsimiles. Respondent admitted that this neglect violated DR 6-101(A)(3).

{¶ 5} The panel found that respondent violated the Disciplinary Rules, as admitted. In recommending a sanction for this misconduct, the panel considered that respondent had been diagnosed with severe depression, attributable in part to stress from overcommitment during the events at issue, and that his condition had improved to the point of remission with the help of therapy and medication. The

panel also considered testimony and numerous letters substantiating respondent's devotion and dedicated service to his family, church, community, and profession. The panel was genuinely impressed with the legion of support respondent enjoyed, and after reviewing the level of his involvement in civic, charitable, religious, and legal organizations, combined with his familial and professional obligations, it appreciated how he had been overwhelmed by stress.

**{¶ 6}** The panel recommended that respondent receive a one-year suspension from the practice of law, with this sanction being suspended and respondent being placed on a one-year probation during which time his practice would be monitored by members of his local bar association, and he would continue to receive medical attention as recommended by his treating physician. The board agreed, adopting the panel's findings of fact, conclusions of law, and recommendation.

---

*Geoffrey Stern*, Disciplinary Counsel, and *Sally Ann Steuk*, Assistant Disciplinary Counsel, for relator.

*Koblentz & Koblentz* and *Richard S. Koblentz*, for respondent.

---

**Per Curiam.**

**{¶ 7}** We agree that respondent violated DR 1-102(A)(4) and (6), 6-101(A)(3), and 9-102(A), as determined by the board. However, our review of this record prevents us from concurring in the recommendation to impose probation in lieu of a full one-year suspension from the practice of law.

**{¶ 8}** In conceding his misconduct, respondent analogized his wrongdoing to cases in which attorneys commingled their funds over time with funds belonging to their clients, see *Columbus Bar Assn. v. Larson* (1991), 60 Ohio St.3d 133, 573 N.E.2d 1055, or in which attorneys neglected several clients, see *Columbus Bar Assn. v. Nichols* (1991), 61 Ohio St.3d 546, 575 N.E.2d 799; *Disciplinary Counsel*

*v. Nichols* (1993), 66 Ohio St.3d 54, 607 N.E.2d 1068; and *Mahoning Cty. Bar Assn. v. Carson* (1994), 68 Ohio St.3d 342, 626 N.E.2d 937. The board apparently accepted this argument, but we do not. None of the attorneys in the cited cases was found in violation of DR 1-102(A)(4) for having committed acts of dishonesty, deceit, misrepresentation, or fraud against clients. Respondent, in contrast, admitted that he perpetrated this $75,000 defalcation with the understanding that he was stealing from estates he had been retained to protect.

{¶ 9} We recognize, as we implicitly did in *Carson*, 68 Ohio St.3d at 343, 626 N.E.2d at 938, and *Nichols*, 66 Ohio St.3d at 55, 607 N.E.2d at 1069, that debilitating depression may mitigate professional misconduct and justify a less severe sanction than we might otherwise impose. However, we have issued an indefinite suspension from the practice of law for misconduct very similar to that committed by respondent, where the attorney also suffered from severe depression. *Disciplinary Counsel v. Shaw* (1984), 15 Ohio St.3d 125, 15 OBR 275, 472 N.E.2d 1075.

{¶ 10} Thus, we are willing to temper our decision today in view of respondent's infirmity and the many assurances of his integrity apart from the instant events, but not to the extent that he may immediately return to practicing law. Accordingly, we order that respondent be suspended from the practice of law in Ohio for a full year. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____